FILED 25 APR '14 15:56 USDC-ORP

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Oregon

| | |
|---|---|
| United States of America<br>v.<br><br>Cyrus Andrew Sullivan<br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  '14-MJ-062

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ April 21, 2014 _____ in the county of _____ Multnomah _____ in the

_____ District of _____ Oregon _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) and (b) | Physical assault, inflicting bodily injury, upon federal employee |

This criminal complaint is based on these facts:

See attached affidavit which is incorporated herein by this reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Charles Dodsworth, Special Agent, FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  _____ 04/25/2014 _____

_____
*Judge's signature*

City and state: _____ Portland, Oregon _____

Janice M. Stewart, U.S. Magistrate Judge
_____
*Printed name and title*

STATE OF OREGON     )
                       ) ss.  AFFIDAVIT OF CHARLES DODSWORTH
COUNTY OF MULTNOMAH   )

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, Charles Dodsworth, having been first duly sworn, do hereby depose and state as follows:

### INTRODUCTION

1.    I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed since July 2002. I am currently assigned to the Portland Division of the FBI where I investigate computer-related crimes. I have received training in the investigation of computer, telecommunications, and other technology crimes. Since April of 2007, I have been involved in the investigation of matters involving the sexual exploitation of children, including the online sexual exploitation of children, particularly as it relates to violations of 18 U.S.C. §§ 2252A and 2422. I am also part of the Portland Violent Crimes Against Children Task Force which is part of a squad that works Internet Fraud, Intellectual Property Rights, Internet Extortion, and Internet Stalking cases.

2.    This affidavit is submitted in support of a criminal complaint charging Cyrus Andrew Sullivan, a white male born XX/XX/1983, with a physical assault of W.S. (the initials of her first and last name), resulting in bodily injury, in violation of 18 U.S.C. § 111.

3.    The statements contained in this affidavit are based upon the following: my own personal knowledge; knowledge obtained from other individuals during my

1 – AFFIDAVIT OF CHARLES DODSWORTH

participation in this investigation, including other law enforcement officers; interviews of

witnesses; my review of records related to this investigation; communications with others

who have knowledge of the events and circumstances described herein; and information

gained through my training and experience.  Because this affidavit is submitted for the

limited purpose of establishing probable cause in support of a criminal complaint, it does

not set forth each and every fact that I or others have learned during the course of this

investigation.   I have set forth only those facts that I believe are necessary to establish

probable cause to believe that Cyrus Andrew Sullivan has violated 18 U.S.C. § 111.

### APPLICABLE LAW

4.      Title 18, U.S.C. § 111 provides, in relevant part, the following:

"(a) In General.— Whoever—
> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes
> with any person designated in section 1114 of this title while engaged in
> or on account of the performance of official duties; ...

shall, ... where such acts involve physical contact with the victim of that
assault..., be fined under this title or imprisoned not more than 8 years, or both.

(b) Enhanced Penalty.— Whoever, in the commission of any acts described in
subsection ... inflicts bodily injury, shall be fined under this title or imprisoned not
more than 20 years, or both."

5.      With regard to persons designated in 18 U.S.C. § 1114, those persons are

covered by section 111 if they are an employee under the following circumstances:

"... any officer or employee of the United States or of any agency in any branch
of the United States Government ... while such ... employee is engaged in or on
account of the performance of official duties, or any person assisting such an
officer or employee in the performance of such duties or on account of that
assistance ..."

2 – AFFIDAVIT OF CHARLES DODSWORTH

6.     With regard to the definition of "bodily injury," 18 U.S.C. §§ 1365(h)(4) and 1515(a)(5) provide, in relevant part, that the term "bodily injury" means "a cut, abrasion, bruise, ... physical pain, ... or any other injury to the body, no matter how temporary."

7.     With regard to the definition of federal employee, case law has established that federal contractors who are engaged within the scope of their federal contracting responsibilities, and others who assist federal employees in the performance of their duties, are within the ambit of the United States employee designated in 18 U.S.C. § 1114, and are therefore protected by 18 U.S.C. § 111. *United States v. Feola*, 95 S.Ct. 1255, 1264-65 (1975) (purpose of § 111 is to protect both the safety of federal officers and the integrity of federal functions); *United States v. Jacquez-Beltran*, 326 F.3d 661 (5th Cir. 2003) (private employee of Corrections Corporation of America was federal employee for purposes of § 111); *United States v. Gardner*, 248 F.App'x 605 (5th Cir. 2007) (private security guard under contract with the United States Marshal's Service was federal employee for purposes of § 111); *United States v. Roy*, 408 F.3d 848, (8th Cir. 2005) (local police officer contracting with federal agency and tribal reservation to provide law enforcement services was federal officer for purposes of § 111); *United States v. Ama*, 97 F.App'x 900 (10th Cir. 2004) (county corrections officer at facility with services agreement between the county facility and the United States Marshal's Service was a federal employee for purposes of § 111).

3 – AFFIDAVIT OF CHARLES DODSWORTH

## STATEMENT OF PROBABLE CAUSE

8.     On April 21, 2014, Cyrus Andrew Sullivan, Federal Inmate number 74918-065, and a resident of the Northwest Regional Re-Entry Center (NWRRC), had a meeting with NWRRC Social Service Coordinator W.S. for the purpose of discussing Sullivan's non-compliance with job search expectations. The NWRRC is a facility that helps offenders make a safe and successful transition from prison to their communities. The NWRRC provides these services under contract with the United States Bureau of Prisons and the United States Probation Office, and the NWRRC employees are therefore contractors with these federal agencies.

9.     W.S. and Sullivan were reviewing a NWRRC Resource Room Computer Use Contract which Sullivan previously refused to sign as it prohibited him from accessing his former e-mail accounts that were used in his criminal activities. During the review of this form, Sullivan became very agitated and stated he would not sign the form as it was unconstitutional. Sullivan continued to become more agitated and defensive. His body tensed, his jaw was clenched, and his voice began to shake.

10.     W.S., in an attempt to diffuse the situation, made an effort to empathize with Sullivan and started to ask open ended questions like (1) what besides computers was he interested in as well as (2) how he could meet the Bureau of Prisons 30 day employment expectation. Sullivan said he was going on home confinement and would sit at his mother's house and do nothing. W.S. told him that was not a viable option and Sullivan became very quiet and started to stare at her. W.S. again asked about Sullivan's

4 – AFFIDAVIT OF CHARLES DODSWORTH

interests, how he intended to move forward, and what he wanted to do. Sullivan said, "You know what I want to fucking do." Sullivan said he would not sign the contract nor comply with the employment expectation. W.S. said they should end the conversation until they could come to a mutual agreement. Sullivan continued to stare at her and she asked him to leave the office and stated that they could talk later if he wanted to.

11.     Sullivan slowly left the office and it appeared that he was going to slam the door shut. W.S. said, "Please do not slam my door." Sullivan then swung it open, mimicked slamming it, but caught it before it closed. W.S. went to the door to make sure Sullivan left the Resource Room and heard Sullivan cursing and telling her she was "fucking with the wrong person and she shouldn't cross him." W.S. asked Sullivan to leave the room and come back later when he was willing to have a conversation. Sullivan came towards her and W.S. pushed the panic alarm. Sullivan came up to her and slapped her hard across the left side of her face. W.S. screamed and then Sullivan punched her in the same location on her face. As W.S. tried to steady herself, Sullivan shoved her in the upper back and she fell over a chair and slammed into a wall injuring her right hand and arm.

12.     On April 21, 2014, A.U. (the initials of her first and last name), a Resource Specialist at the NWRRC, was in her office editing a document. A.U. overheard W.S. say something to the effect of "Please go to your room. We will come speak with you." A.U. saw Sullivan standing in front of W.S. and then saw him take a step closer to her. W.S. said, "Please step back." W.S. repeated, "Please step back" and informed Sullivan

5 – AFFIDAVIT OF CHARLES DODSWORTH

that security had been called. As A.U. exited her office, she saw Sullivan physically attack W.S. by hitting her several times on the face and push her into her office.

13.     On April 21, 2014, H.K. (the initials of her first and last name), a Case Manager at NWRRC, was in her office (which was next door to W.S.'s office). H.K. heard Sullivan say in a raised voice, "This is fucked up" and then heard W.S. say, "Don't slam my door." H.K. immediately went over to W.S.'s office and saw W.S. and Sullivan facing each other at the entrance of her office. W.S. told Sullivan to stay back and informed him she had alerted security by pressing her alarm button. Sullivan then hit W.S. and pushed her forcefully back towards the wall of her office. H.K. stepped towards Sullivan and yelled, "Get back!" H.K.'s arms were up in a guarded position in an attempt to stop Sullivan from attacking W.S. At this point, Sullivan lunged toward H.K. and started swinging his arms at her, with the intent of hitting her. H.K. then noticed Case Manager A.S. (the initials of his first and last name) was running down the hallway and A.S. grabbed Sullivan and restrained him.

14.     On April 21, 2014, A.S., a Case Manager at NWRRC, was filing paperwork when he heard a loud bang and a woman shouting, "Get back!" A.S. then heard that a panic button had been activated so he ran down the hallway and approached the door to W.S.'s office. A.S. saw Sullivan yelling at W.S. in a loud and assaultive manner. A.S. grabbed Sullivan's hand and told him to calm down while removing him from the office. Sullivan began to resist with force and fought back. A.S. managed to secure Sullivan in a restraining hold as they struggled down the hallway towards the case management area.

6 – AFFIDAVIT OF CHARLES DODSWORTH

Once in the case management area, Case Manager M.G. (initials of his first and last name) told Sullivan to calm down. A.S. still had Sullivan in a restraining hold and Sullivan managed to free his elbow and hit A.S. on the right side of A.S.'s face.

15.     On April 22, 2014, I reviewed Portland Police Bureau (PPB) report 14-032337 regarding the aforementioned assault. PPB Officer M.H. (initials of his first and last name) observed W.S. with an ice pack on her hand. W.S. showed Officer M.H. her hand and Officer M.H. observed severe swelling, a slight cut, and a bruise on the top of W.S.'s hand. Officer M.H. also observed W.S.'s face and saw some faint signs of bruising. W.S. said her hand really hurt and on a scale of 1 to 10, with 10 being the most painful, it was probably an 8. Officer M.H. obtained statements from W.S., H.K., and A.S. which were consistent with their original statements above.

16.     Officer M.H. then went to speak to Sullivan who invoked his right to remain silent. Sullivan was arrested and taken into the custody of the Portland Police Bureau.

17.     On April 24, 2014 I reviewed video footage of the incident which was taken from a security camera located outside W.S.'s office. The video showed Sullivan and W.S. standing in front of each other at the threshold of her office door. It appeared they were discussing something and then Sullivan hit W.S. in the face and pushed her into a chair in her office, consistent with the statements referenced above.

18.     NWRRC is a non-profit organization which contracts with the Bureau of Prisons and United States Probation Office to provide services to inmates of the Bureau

7 – AFFIDAVIT OF CHARLES DODSWORTH

of Prisons. Its employees, including W.S., H.K. and A.S., have undergone federal

background checks and are contractors for the United States Bureau of Prisons and the

United States Probation Office. As set forth above, as employees of the NWRRC, they

are persons designated and covered by 18 U.S.C. §§ 111 and 1114.

## DEFENDANT'S CRIMINAL HISTORY

19.     Sullivan is in the custody of the Bureau of Prisons due to his conviction for

making a threatening communication in violation of 18 U.S.C. § 875(c) in Case Number

3:13-CR-00064-HZ-1. The conviction stemmed from an online business model created

by Sullivan which involved websites to which malicious content was posted about people

who were informed they had to pay fees through a "reputation management service" to

have the information removed. One of Sullivan's victims, A.K. from Portland, Oregon,

continued to demand that Sullivan remove false and malicious information which was

posted about her on one of the websites controlled by him. When Sullivan refused to

remove the information, A.K. aggregated publicly available information about Sullivan

and posted it online for other people, including other victims, to see. When Sullivan

realized what she had done, he threatened to kill her. On July 18, 2013, Sullivan was

sentenced by United States District Judge Marco A. Hernandez to serve a 24 month term

of imprisonment which placed him in the custody of the Bureau of Prisons. After his

credit for time served was calculated, his release date was established as July 2, 2014.

Pursuant to Bureau of Prisons policy, within six months of Sullivan's release date, he was

8 – AFFIDAVIT OF CHARLES DODSWORTH

placed in the NWRRC in order to obtain the services and skills necessary to assimilate back into society.

20.     Sullivan's conviction for making a threatening communication followed a number of increasingly violent convictions as set forth below.

a.      Sullivan was first convicted in 2003 of two counts of criminal mischief in the second degree in Benton County Circuit Court in Corvallis, Oregon, Case Number V0300068. The offenses occurred when he was 20 years old. The convictions stemmed from an incident while he was a student at Oregon State University. He was intoxicated and had recently been disassociated from the Tau Kappa Epsilon fraternity when he broke three windows in the fraternity house with various items and shattered a car windshield with a brick. He was sentenced on August 29, 2003 to pay a $295 fine.

b.      Following this incident, he transferred to Portland State University. He was next convicted in 2004 of two counts of assaulting a public safety officer in Multnomah County Circuit Court in Portland, Oregon, Case Number 03-10-35094. The offenses occurred in October of 2003 when he was 20 years old. These convictions resulted from Sullivan's refusal to leave a facility at Portland State University in which he was publicly drinking. When asked by another person to pour out beer he was drinking because it was against the rules, Sullivan yelled "Fuck you faggot!" and hit the person in the arm. The person then began to call the Campus Public Safety Office when Sullivan knocked the phone from his

9 – AFFIDAVIT OF CHARLES DODSWORTH

hand, causing the phone to hit the floor and break into pieces. Sullivan then threw a beer can at the person and yelled "Fuck you faggot!" Sullivan then left the lobby and when contacted by public safety officers about the incident, he began fighting with them, threatening to kill them. The fight involved a violent struggle with several officers, requiring Sullivan to be tazed twice in order to be subdued. He was sentenced on February 27, 2004 to a 36 month term of probation.

      c.    Sullivan was next convicted of harassment in Benton County Circuit Court in Corvallis, Oregon, Case Number CM0520478. The offense occurred in April of 2005 when he was 21 years old. This conviction stemmed from actions against a former Tau Kappa Epsilon fraternity brother. Sullivan was angry with the former fraternity brother whom he believed was promoting the hazing of a pledge class. He used information he obtained from the former fraternity brother's Instant Messenger account to create a forged Criminal Sexual Offender Release Notification which included the former fraternity brother's photograph and personal information, and alleged that the former fraternity brother was a predatory sex offender. He sent the notification, which included flyers, throughout the sorority system at Oregon State University. Sullivan was sentenced on August 25, 2005 to serve ten days in jail.

      d.    After this conviction, Sullivan transferred from Portland State University to the University of Oregon in Eugene, Oregon. While a student there he was involved in a series of incidents stemming from his inappropriate behavior.

10 – AFFIDAVIT OF CHARLES DODSWORTH

He was subsequently convicted of recklessly endangering another person in Lane County Circuit Court in Eugene, Oregon, Case Number 20-07-13499. The offense occurred in June of 2007 when Sullivan was 23 years old. The conviction arose from a pop bottle bomb making incident. Sullivan was sentenced on November 13, 2007 to an 18 month term of probation.

      e.     Sullivan was next convicted of recklessly endangering another person in Multnomah County Circuit Court Case Number C10-03-43325. The offense occurred in March of 2010 when Sullivan was 26 years old. This conviction arose from an incident at the Dancin Bare Bar in Portland, Oregon. During that incident, employees told Sullivan to not use his cell phone in the establishment, and they refused to serve him because he was highly intoxicated. He became belligerent and began drinking from the pitchers and glasses of other patrons. When told to leave, he refused. When a bouncer tried to take a glass of beer from him, Sullivan threw the glass toward a bartender. It hit a flat screen television, cracking its plastic covering. When employees grabbed him in an effort to escort him out of the bar, he reached for a knife in his pocket. Employees were able to take the knife, which had a blade of approximately three inches, before Sullivan was able to open it all the way. He was sentenced on February 15, 2013 to a four month term in jail, followed by a 36 month term of probation.

11 – AFFIDAVIT OF CHARLES DODSWORTH

## CONCLUSION

21.     Based on the foregoing information, I have probable cause to believe that

Cyrus Andrew Sullivan has violated 18 U.S.C. § 111 in that he forcibly assaulted and

inflicted bodily injury upon W.S., who was an employee of the United States Bureau of

Prisons and engaged in the performance of her official duties. I therefore request that the

court issue a criminal complaint charging Sullivan with assaulting a federal employee and

issue a warrant for his arrest on this offense.

22.     This affidavit and the requested criminal complaint were reviewed by

Assistant United States Attorney (AUSA) Sean Hoar prior to being presented to the court.

AUSA Hoar informed me that, in his opinion, the affidavit sets forth adequate probable

cause to support the issuance of the requested criminal complaint and arrest warrant.

CHARLES DODSWORTH
Special Agent
Federal Bureau of Investigation

Subscribed to before me this 25th of April, 2014.

THE HONORABLE JANICE M. STEWART
United States Magistrate Judge

12 – AFFIDAVIT OF CHARLES DODSWORTH